JUSTICE GRAY,
dissenting.
¶47 I respectfully dissent from the Court’s opinion. It is my view that, in its eagerness to clarify negligence per se, the Lyndes “involuntary action” rule and the “sudden emergency” doctrine in automobile accident cases, the Court ignores the arguments raised and briefed by the parties, departs from our proper role, and reverses the District Court in derogation of our longstanding rule that we will not overturn a trial court’s decision on the basis of arguments not presented to that court. I cannot agree.
¶48 Craig moved for partial summary judgment in the District Court on the issue of liability, asserting that Moseman had been negligent per se by violating § 61-8-321, MCA, when his vehicle crossed over the center line of the highway and collided with her vehicle. The thrust of Craig’s motion was that no genuine issue of material fact existed as to Moseman’s voluntary violation of the statute requiring a driver to drive on the right half of a roadway and, as a result, that the Lyndes involuntary action rule — under which an involuntary violation of the statute is only prima facie evidence of negligence — did not prevent Moseman’s statutory violation from being negligence per se. Craig did not argue in the District Court that Lyndes should be overruled; she contended only that her evidence established Moseman’s voluntary overcorrection of his vehicle, thereby making the Lyndes exception to negligence per se inapplicable. The District Court determined that Craig did not establish the absence of genuine issues of material fact regarding the voluntariness of Moseman’s actions or that his conduct was not that of a reasonable and prudent driver, and denied Craig’s motion for summary judgment on liability on that basis. On appeal, Craig contends only that the District Court misapplied Lyndes and Kudrna. That, then, is the issue before us.
¶49 Rather than address Craig’s actual arguments, however, and in its desire to correct what it considers an improperly expanded and misapplied rule of law, the Court raises — and resolves — its own issue *337 regarding the continued viability of the Lyndes rule. In my view, this is an unwarranted departure from our proper role.
¶50 This Court’s duty is to decide cases based on the issues and arguments raised by the parties. Indeed, our system of appellate review is premised on providing parties with the opportunity to argue their positions and challenge the positions and legal authority propounded by their opponents, following which this Court can make a reasoned decision based on the issues and arguments raised by counsel.
While the temptation is often great to decide a case on the basis of the argument that “should have been made,” but was not, in blind-siding an issue we run the very real risk of substituting advocacy for neutrality.
State v. Zabawa (1996), 279 Mont. 307, 318, 928 P.2d 151, 158 (Nelson, J., concurring). Furthermore, to raise and determine issues sua sponte is unfair to litigants who find their cases resolved on unforeseen grounds and to district courts which find their decisions overturned on bases they never had an opportunity to address. Thus, while I do not disagree that our cases on negligence per se, the involuntary action rule and the sudden emergency doctrine are somewhat confusing and in need of clarification, a sweeping decision on those subjects should await a case presenting the arguments.
¶51 In addition, it is my view that the Court’s reliance on, and adoption of, the views set forth in Justice Trieweiler’s special concurring opinion in Cameron is entirely inappropriate here. The traditional use of special concurrences and dissents — which do not reflect the Court’s opinion on the legal issues of the case — is by parties in future cases to urge a different dispositive analysis of the case from that in currently controlling precedent. Such a use is entirely proper. It is quite another thing, in my view, for the Court itself to simply bootstrap itself into new controlling precedent by using concurring or dissenting views from previous cases which have not been advanced by any party. The short-term effect of such an approach is to cut both the litigating parties and the district courts out of the case entirely. The long-term consequence, I fear, is that the Court will become an internal debating society which will seize on concurring or dissenting opinions which did not garner the votes of the majority of the Court when written, and use them to create new law whenever it desires to do so, even in the absence of any request by a party — in either the trial court or this Court. This strikes me as an unwise approach in the present case, and a dangerous precedent for future cases.
*338 ¶52 Moreover, to the extent the Court shares the concerns and philosophy expressed in the Cameron concurrence, I agree that it should say so; indeed, I would join in such a statement. The Court should then be willing, however, as Justice Trieweiler was in Cameron, to exercise judicial restraint and await a case raising the impropriety of the Lyndes involuntary action rule, rather than being willing to reverse a district court on an issue never raised. Deference to the parties and the arguments raised, to the District Court, and to the importance of stare decisis in maintaining stability and consistency in the law require no less.
¶53 Finally, with regard to the Court’s approach to the present case, I strenuously disagree with the Court’s suggestion that our de novo summary judgment review somehow authorizes this Court to change the very nature of a case on appeal in order to “clarify” a confusing area of the law or for any other purpose. De novo review does not — and must not — provide this Court with inherent authority to change the basis on which a summary judgment issue was raised and supported by evidence in the trial court and, having changed the entire basis of the summary judgment issue, to reverse a trial court on a theory never presented there or here.
¶54 Nor does the Court explain how such a new view of the scope of our de novo summary judgment review will work in the future. Will we continue to apply to the litigating parties our long-established rule that an issue not raised in the trial court cannot be raised on appeal, while taking it upon ourselves to raise and resolve any issue we might see in the case and think should have been raised? Notwithstanding that we are, in fact, the Court, how can we justify such a position to either litigating parties or district courts? And where will it end? Will we research areas of the law in which we do not like — or find confusing — existing precedent, wait for a case presenting the subject matter generally, and then see if we can “sell” each other on a new approach, without caring that the parties are not part of that process? The upshot of such an approach, I suggest, is the issuance of opinions by the Court on matters and in cases which are not, in fact, before us in any proper sense of the phrase. Suffice it to say that I find the Court’s newly created authority disturbing.
¶55 Not to belabor the point, but in summary, the Court has clarified three entire areas of the law — and overruled Lyndes to do so — without the benefit of any briefing from any party. Indeed, it has done so, in the present case, by ignoring Craig’s arguments, the basis for the *339 District Court’s ruling and, ultimately, the jury’s verdict. I cannot agree.
¶56 As stated above, the issue before us is whether the District Court erred in denying Craig’s motion for summary judgment on liability by determining that genuine issues of material fact existed regarding Moseman’s negligence which required resolution by a jury. It is my view that the following analysis, which addresses the arguments actually raised by Craig and decided by the District Court, establishes that the District Court did not err in denying her motion for summary judgment.
¶57 Craig’s first argument is that the evidence she provided in support of her motion establishes that the presence of Moseman’s vehicle in her lane of travel, in violation of § 61-8-321, MCA, resulted from his voluntary act of overcorrecting his vehicle when it went off the side of the road, causing the vehicle to skid to the left. She contends that, because she established the absence of genuine issues of material fact that Moseman’s alleged act of overcorrecting was voluntary, his violation of § 61-8-321, MCA, was negligence as a matter of law and the Lyndes involuntary action rule is inapplicable.
¶58 With regard to her contention that she established Moseman’s voluntary violation of the statute, Craig relies primarily on the deposition of Highway Patrol Officer Kelly Mantooth (Mantooth), who responded to — and subsequently investigated — the accident. She contends that Mantooth’s deposition testimony establishes that, when Moseman realized his vehicle was veering off the right side of the road, he turned his steering wheel too hard to the left, thereby overcorrecting and sending the vehicle into an uncontrollable broadside skid into her lane of traffic. Craig further contends that Mantooth’s deposition testimony establishes that Moseman’s action of overcorrecting was a voluntary act. The portions of Mantooth’s deposition on which Craig relies do not support her contention, however. Mantooth stated, in response to various hypothetical scenarios presented by Craig’s attorney, that the referenced scenario was a possible explanation of how the accident occurred. He further testified, however, that a number of other possible explanations existed for what happened and he could not say with any certainty which explanation was correct. Therefore, Mantooth’s deposition testimony does not establish the absence of genuine issues of material fact regarding whether Moseman’s abrupt left turn and skid into Craig’s traffic lane was a voluntary act.
*340 ¶59 Nor does the other evidence Craig presented in support of her motion for summary judgment establish that Moseman’s actions were voluntary. Craig’s deposition testimony was that the events of the accident occurred so quickly that she either did not see or does not remember precisely what happened. She testified that she saw the deer in the road and the next thing she knew was that Moseman’s vehicle collided with her vehicle. She had no recollection of how Moseman’s vehicle ended up in her lane and no personal knowledge of the voluntariness of any of Moseman’s actions.
¶60 Craig also relied on the reports of her accident reconstruction expert, Harry Townes (Townes), and Schell’s accident reconstruction expert, John Jurist (Jurist). Townes’ report indicates that Moseman’s vehicle went into a broadside skid across the road into Craig’s traffic lane, but does not address what might have caused the skid or whether Moseman did so by voluntarily overcorrecting his vehicle. Jurist’s report, while concluding that Moseman drove off the right side of the highway and then overcorrected his vehicle in an attempt to return to the road, states that such a maneuver probably was instinctive and that, at that point, Moseman had lost control of his vehicle. Neither of the reports establishes that the presence of Moseman’s vehicle in Craig’s traffic lane was the result of a voluntary action on Moseman’s part.
¶61 I would conclude that Craig failed to meet her initial burden on summary judgment of establishing the absence of genuine issues of material fact regarding Moseman voluntarily overcorrecting his vehicle, thereby causing it to skid into her lane of traffic. On that basis, I would hold that the District Court correctly determined that Craig was not entitled to summary judgment on the issue of liability.
¶62 Craig also argues that the District Court misapplied the relevant case law in concluding that there were factual issues regarding whether Moseman acted as a reasonable and prudent driver under the circumstances. She relies on Kudrna for the proposition that all drivers have a duty to anticipate and be prepared for the sudden appearance of obstacles in the highway, and argues thereunder that encountering a deer on the highway is not an emergency as a matter of law. In my view, Craig misreads Kudrna.
¶63 There, an accident occurred when the driver of a truck owned by the Comet Corporation (Comet), belatedly realizing that a truck in front of him was stalled in the traffic lane, pulled into the oncoming traffic lane to pass the stalled truck in an attempt to avoid colliding *341 with it. As the Comet truck was moving back into its lane of travel, an oncoming van struck the rear of the truck’s trailer, resulting in the death of two of the van’s occupants. A wrongful death and survivorship action was brought against both truck drivers and their employers. The jury returned a defense verdict and the plaintiffs appealed. Kudrna, 175 Mont. at 33-34, 572 P.2d at 185-86.
¶64 The plaintiffs argued that the district court should have directed verdicts of liability against Comet and its driver because the driver’s passing of the stalled truck violated several motor vehicle statutes and constituted negligence as a matter of law. Comet responded that the sudden emergency created by the presence of the stalled truck on the highway excused any statutory violations by its driver. Kudrna, 175 Mont. at 37-38, 572 P.2d at 188. We concluded that the sudden emergency doctrine did not apply because the emergency with which the Comet driver was faced resulted from his own failure to timely see that which was in plain sight — a stalled truck ahead of him on the highway — and that the stalled truck did not suddenly appear in front of the Comet truck. Kudrna, 175 Mont. at 41, 572 P.2d at 189-90. On that basis, and in light of the other evidence presented at trial, we held that Comet and its driver were negligent as a matter of law and that the district court should have granted directed verdicts against them. Kudrna, 175 Mont. at 47, 572 P.2d at 193.
¶65 We emphasized in Kudrna that the sudden emergency doctrine rarely should be applied in ordinary automobile accident negligence cases. Specifically, we observed that the doctrine is qualified by the requirement that people anticipate and be prepared for some emergencies when engaged in an activity where emergencies are likely to arise, and that any driver “ ‘must be prepared for the sudden appearance of obstacles in the highway. ...’ " Kudrna, 175 Mont. at 43, 572 P.2d at 191 (quoting Erickson v. Perrett (1976), 169 Mont. 167, 174, 545 P.2d 1074, 1079). We did not conclude, as Craig appears to assert, that there are no circumstances in which the sudden appearance of an obstacle in the roadway could render reasonable a driver’s subsequent actions in attempting to avoid the obstacle.
¶66 Moreover, we addressed the application of the sudden emergency doctrine again in Eslinger. There, we reiterated the Kudrna principle that the doctrine should not be used in ordinary automobile accident cases and quoted that portion of Kudrna which emphasized that some emergencies must be anticipated and drivers must be pre *342 pared for the sudden appearance of obstacles on the highway. Eslinger, 195 Mont. at 299-300, 636 P.2d at 258. We also clarified, however, that a sudden emergency situation is encompassed within the general standard of conduct to be applied in any negligence action — that of a reasonable person under the circumstances as they would appear to one using proper care; the emergency is merely one of the circumstances to be considered. Eslinger, 195 Mont. at 302, 636 P.2d at 260.
¶67 Thus, while Craig correctly asserts that drivers generally must be prepared for the sudden appearance of obstacles in the highway, the question of whether a driver faced with the sudden appearance of such an obstacle reacted appropriately under the circumstances still must be analyzed in terms of the reasonable person negligence standard. As a result, the question in the present case — as the District Court recognized — was whether Moseman acted reasonably under all the circumstances when faced with the sudden appearance of a deer on the road in front of his vehicle. This was clearly a factual question to be answered by the jury.
¶68 I would conclude that the question of whether Moseman acted in a reasonable and prudent manner was properly left to the jury. Thus, on that basis, as well as the Lyndes rule basis, I would affirm the District Court’s denial of Craig’s motion for summary judgment on the issue of liability. I dissent from the Court’s failure to do so.
¶69 Finally, because I would affirm the District Court’s denial of Craig’s summary judgment motion, I would fully address the issue of whether the District Court abused its discretion in granting Craig a new trial on the basis of improper comment by defense counsel in closing arguments. On that issue, I would conclude that defense counsel made three improper comments in closing arguments which prejudiced Craig’s right to a fair trial. As a result, I would affirm the District Court’s grant of a new trial on all issues.